**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES M. HANKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-CV-390-SAJ |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits. Plaintiff asserts that the Administrative Law Judge ("ALJ") failed (1) to carry his burden of proof at step 5 of the sequential evaluation process; (2) to properly consider the opinion of the treating physician; and (3) to perform a proper credibility determination. For the reasons discussed below, the Court **reverses** the Commissioner's decision and **remands for an immediate award of benefits.**

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, James M. Hankins, was born December 1, 1947. [R. 77-78, 536]. He claims that he is unable to work because of problems with his head, neck, shoulders, heart, lungs, right arm, elbow, hands, lower back, right hip, knees, his right foot, and high blood pressure. [R. 150, 541.] He also testified that he had been treated for depression [R. 549-

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

50; *see* R. 300-05]]. Further, he has been diagnosed with a learning disability and admitted to being a slow reader. [R. 201-02, 537]. His relevant prior work history shows that he was a deckhand in the merchant marines. [R. 117-21; 151; 179; 538-39]. The last date Plaintiff met the requirements for disability insurance, i.e., his "DLI" ("date last insured"), was December 31, 2000. [R. 38-40, 535].

Plaintiff filed for social security benefits by application dated November 14, 2000 [R. 78-81, 535] (protective filing date: November 7, 2000 [R. 77].)[3/] He alleged that he became disabled on January 27, 2000. [R. 77-81]. His application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. That request was granted, and a hearing was held on April 23, 2003. [*See* R. 310-47]. ALJ Gene M. Kelly issued a decision denying benefits on September 27, 2002. [R. 21-32]. The Appeals Council denied Plaintiff's request for review [R. 12-13], and Plaintiff appealed the decision to this Court. On June 9, 2004, this Court granted the Commissioner's motion to reverse and remand. *Hankins v. Barnhart*, No. 03-CV-537-CL (N.D. Okla. 2004) [*see* R. 465-72]. ALJ Kelly held a hearing on June 21, 2005 [see R. 530-73], and rendered a decision on July 18, 2005, again concluding that Plaintiff was not disabled within the meaning of the Social Security Act. [R. 382-95]. Plaintiff filed a Request for Review of Hearing Decision on August 15, 2005 [R. 377-81], and the Appeals Court declined to assume jurisdiction on June 6, 2006. [R. 348-49]. Plaintiff again seeks judicial review.

---

[3/] The record shows that Plaintiff initially filed for social security benefits in 1997 due to alleged pain caused by nerve damage to his elbow and hand. [R. 70-76.] That claim was denied initially and upon reconsideration. [R. 41-49.]

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[4/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial

---

[4/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); see *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

---

[5] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

-- 4 --

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ determined that Plaintiff has "severe" problems with his heart, right arm, wrist, hand, shoulder, knee, elbow, neck, head, feet, hip and back, as well as hypertension, depression, learning disability, and shortness of breath, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [R. 393].  The ALJ deemed plaintiff's description of his limitations prior to December 31, 2000, not fully credible or consistent with the record. [*Id.*] The ALJ described Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform sedentary and light work activity, i.e., lift and/or carry up to 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for 2 hours in an 8-hour workday at 1 hour intervals, and sit for up to 8 hours in an 8-hour workday. The claimant can occasionally push and/or pull with his right upper extremity; operate foot controls with his right lower extremity; and can occasionally climb, balance, kneel, crouch, crawl, stoop, and reach with his right upper extremity.  Due to his symptoms of depression, the claimant is limited to simple, routine, and repetitive instructions and would be slightly limited in contact with the public, coworkers, and supervisors.  The claimant is afflicted with symptoms from a variety of sources, to include mild to moderate chronic pain, which are sufficiently severe so as to be noticeable to him at all times; but that nonetheless, he would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. The claimant takes medication for relief of his symptoms, but those medications do not preclude him from functioning at his residual functional capacity, and he would remain reasonably alert to perform required functions in the work setting.

[R. 393-94]

The ALJ proceeded to find that Plaintiff' would be unable to perform his past relevant work or the full range of light work, but that there were a significant number of jobs in the regional and national economies that the Plaintiff could perform. [R. 394].  The ALJ listed as examples of such jobs two that the vocational expert listed: cleaner/housekeeping,

Dictionary of Occupational Titles (DOT") Code # 323.687-014, described as light in exertion and unskilled, with a specific vocational preparation (SVP) of 2; and touch-up screener, DOT Code # 726.684-110, described as sedentary in exertion and unskilled (SVP of 2). [*Id.*] Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined in the Social Security Act, as amended, at any time through December 31, 2000, the date he last met the insured status requirement under Title II. *See* 20 C.F.R. 404.1520(f). [*Id.*]

## 4.  REVIEW

When this matter came before the Court in 2004, the Commissioner filed a motion to reverse and remand, stating:

> The administrative law judge (ALJ) in the present case did not provide a rationale for rejecting the opinion of Michael Tanner, M.D. Plaintiff's treating physician, regarding Plaintiff's residual functional capacity. Further, the ALJ's hypothetical question to a vocational expert did not include the functional limitations identified by Dr. Tanner.  Remand is necessary to reevaluate Dr. Tanner's opinion.

[R. 466].  The Court granted the Commissioner's request.  However, on remand the ALJ again failed to provide a rational for rejecting Dr. Tanner's opinion and to include the functional limitations identified by Dr. Tanner in his hypothetical question to the vocational expert.  Further, the limitations included by the ALJ in his hypothetical question preclude the two jobs identified by the vocational expert.

The medical records show that Dr. Tanner initially treated Plaintiff before and after Plaintiff's surgeries in 1991 and 1992 to Plaintiff's right wrist and elbow arising from work injuries. [R. 185-200].  Dr. Tanner released Plaintiff in 1993 with permanent work restrictions.  These included "no lifting of more than 20 pounds using his right upper extremity" and "no repetitive gripping or twisting of more than 5 pounds pressure." [R. 186].

Dr. Tanner saw Plaintiff again after Plaintiff had surgery on his right knee in March 2000 [R. 277-78], and Dr. Tanner performed a second surgery on Plaintiff's right knee in November 2000 [R. 285-86]. On December 5, 2000, Dr. Tanner opined that Plaintiff had satisfactory early recovery, but required continued rehabilitation. He also stated that he would make an assessment four weeks later to determined whether Plaintiff would need permanent work restrictions. [R. 248].

On January 2, 2001, Dr. Tanner noted some improvement, but advised continued physical therapy. [R. 247]. He stated: "[Plaintiff] may return to restricted work duties in which he does no lifting or more than 40 pounds, no kneeling, squatting, or climbing ladders." [*Id.*] On January 30, 2001, Dr. Tanner noted that Plaintiff still had pain and stiffness in his knee, but he felt that Plaintiff had reached maximum medical improvement, and he had no other therapeutic measures to offer him. [R. 246]. He specifically stated: "I feel that [Plaintiff] should have permanent work restrictions at least with no lifting of more than 40 lbs, no kneeling and no squatting." [*Id.*]

Despite this limitation, the ALJ's RFC assessment and his question to the vocational expert included no restriction on kneeling for Plaintiff. [*See* R. 389-90; 392]. Instead of relying on the treating physician's assessment, the ALJ relied upon the assessment of a consultative examiner who examined Plaintiff on May 22, 2002. [R. 389; 287-94]. The consultative examiner opined that Plaintiff could stand and/or walk at least 2 hours in a 8-hour workday [R. 291], and occasionally kneel, crouch, crawl, stoop, balance, and climb [R. 292]. The ALJ's hypothetical question and RFC assessment included those limitations [R. 567-68]. They also included the ALJ's finding that, due to Plaintiff's alleged depression, Plaintiff could perform only work that was "simple, repetitive and routine, . . . ." [R. 568]. The

vocational expert testified that, given these limitations and others accepted by the ALJ, Plaintiff could perform as a housekeeper and touch screener. [R. 569].

The vocational expert stated that the housekeeper position is listed in the Dictionary of Occupational Titles ("DOT") as a light, unskilled job with an SVP of 2. [R. 565]; *see* DOT, #323.687-014 (4th ed. Rev. (1991)). The touch-up screener is listed as a sedentary unskilled job. R. 565; *see* DOT #726.684-110. Plaintiff points out that the touch-up screener job also has an SVP of 2.

The jobs identified by the vocational expert fail to take Plaintiff's limitations into account in two ways. First, the full range of "light" exertional work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Social Security Regulation ("SSR") 83-10 (PPS-101), 1983 WL 31251 (S.S.A.); s*ee* 20 C.F.R. §§ 404.1567(b). 416.967(b). Hence, he cannot perform the job of housekeeper, which is listed at the "light" exertional level. Second, the ALJ limited Plaintiff to "simple, repetitive and routine" work, which would preclude his performing a job requiring a reasoning level or SVP of 2. *See Cooper v. Barnhart*, No. 03-CV-665-J, 2004 WL 2381515, *4 (N.D. Okla. Oct. 15, 2004) (unpublished case).[6/] Both of the positions identified by the vocational expert require an SVP of 2.

In addition to these errors, Plaintiff points out that the DOT shows both the housekeeper and touch-up screener jobs as requiring "frequent" reaching and handling.

---

[6/] *Cf. Segura v. Barnhart*, No. 04-1173, 2005 WL 2203237, *711 (10th Cir. Sept.12 , 2005) (approving an ALJ's determination that reasoning, mathematical, and language development skills at the "most basic rung" of the General Educational Development Scale of the DOT restrict the jobs a claimant can perform to "those requiring only the mental ability to 'understand, remember and carry out one and two-step work instructions in jobs that are routine and repetitive in nature.'")

The consultative examiner and the ALJ found that Plaintiff was limited to no more than occasional reaching with his right upper extremity. [R. 389, 393]. While this limitation would not preclude Plaintiff from performing the full range of light or sedentary work, it would appear to reduce the number of jobs available in the state economy. Finally, the Court notes that, in response to questioning by the Plaintiff's representative at the hearing, the vocational expert testified that a limitation of no gripping or twisting of greater than five pounds would eliminate the jobs available that plaintiff could perform. [R. 570.] This was the limitation placed on Plaintiff by Dr. Tanner in 1993 [R. 186]. The ALJ did not include this limitation in his RFC assessment. "[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

The "treating physician rule" requires that the Commissioner generally give more weight to medical opinions from a treating source than to that of a non-treating source. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see Langley*, 373 F.3d at 1118; *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

If the ALJ concludes that the treating physician's opinion is not entitled to controlling weight, the inquiry does not end. The ALJ must then evaluate whether the treating source

medical opinions are entitled to deference and the ALJ must weigh the treating opinion using all of the factors provided in §§ 404.1527, 416.927.  *See Langley*, 373 F.3d at 1119; *Hamlin*, 365 F.3d at 1215 (ALJ must consider specific factors in determining what weight to give medical opinion).  The factors which the ALJ should evaluate include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*E.g. Watkins*, 350 F.3d at 1301 (quotation omitted); s*ee* 20 C.F.R. § 404.1527(d)(2)-(6).

Further, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300 (quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (quotations omitted).  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

In this matter, the ALJ failed to apply the treating physician rule, at least as to Dr. Tanner's restrictions on kneeling, gripping and twisting for Plaintiff.  The ALJ did not articulate the weight, if any, he gave Dr. Tanner's opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion and instead, following the consultative examiner's opinion.  He conducted no analysis of the six factors outlined in

-- 10 --

Watkins and numerous other Tenth Circuit opinions. Accordingly, the Court concludes that, despite being given a second chance to provide a rationale for rejecting Dr. Tanner's opinion, the ALJ failed to do so, and this failure led to yet another hypothetical question to the vocational expert that did not include the functional limitations identified by Dr. Tanner. In addition, the jobs identified by the vocational expert cannot be performed by someone with the RFC the ALJ actually did assess for Plaintiff. In light of these errors, the Court declines to address the other errors alleged by Plaintiff.

While the Court would normally reverse and remand for further proceedings consistent with this opinion, the Court finds that an immediate award of benefits is appropriate in this situation, where the ALJ failed to conduct further proceedings consistent with the Court's prior opinion granting the motion to reverse and remand of the Commissioner.[7/] Plaintiff filed his claim for benefits in November 2000, and almost seven years have passed. A remand for additional fact finding and correct application of the law would serve no useful purpose, and "merely delay the receipt of benefits." *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation omitted).

Accordingly, the Commissioner's denial decision is **reversed** and the case **remanded for an immediate award of benefits.**

It is so ordered this 25th day of September, 2007.

Sam A. Joyner
United States Magistrate Judge

---

[7/] The Court notes also that the ALJ made numerous other errors in evaluating Plaintiff's claim for disability benefits. For instance, the ALJ kept referring in the hearing to the Plaintiff's claim as one for Workers' Compensation benefits [R. 532, 535]; the ALJ stated that, at the time of the 2002 hearing, Plaintiff was the sole caregiver for his 8-year-old son [R. 391], whereas Plaintiff actually testified that he merely had visitation rights [R. 432]; and the ALJ said that Plaintiff claimed to be disabled due to heart "surgery" [R. 386], where Plaintiff claimed to be disabled due to an enlarged heart – not surgery to his heart – and there is no evidence that Plaintiff has had surgery on his heart.